UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RICCO RAFEAL WILLIAM-SALMON,

    Petitioner,

v.                                                       Case No. 21-10188

GREGORY SKIPPER,

    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

Petitioner Ricco Rafeal William-Salmon, incarcerated at the Michigan Reformatory in Ionia, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) In his *pro se* application, Petitioner challenges his conviction for first-degree premeditated murder,[1] conspiracy to commit first-degree murder,[2] and felony-firearm.[3] For the reasons set forth below, his petition will be denied with prejudice.

**I. BACKGROUND**

Petitioner was convicted following a jury trial in the Wayne County Circuit Court, in which he was tried jointly with co-defendant Antonio Caddell. The court recites verbatim the Michigan Court of Appeals' factual summary of the case, since it is

---

[1] Mich. Comp. Laws § 750.316(1)(a).
[2] Mich. Comp. Laws §§ 750.157a and 750.316.
[3] Mich. Comp. Laws § 750.227b.

presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

> Defendants' convictions arise from their participation in the hired murders of three victims, Reed, Keys, and Zechman, allegedly in retaliation for an earlier "Eastside Barbershop shooting" on November 6, 2013. Reed was killed on Hull Street in Detroit on November 23, 2013. Keys and Zechman were killed inside a vehicle in Detroit on April 30, 2014. In LC No. 16-007204-01-FC, the prosecutor charged both Caddell and William-Salmon with first-degree premeditated murder, conspiracy to commit murder, and felony-firearm in connection with Reed's death. In LC No. 16-007144-01-FC, the prosecutor charged Caddell with two counts of first-degree premeditated murder, conspiracy to commit murder, solicitation of murder, and felony-firearm in connection with the deaths of Keys and Zechman.
>
> William-Salmon initially pleaded guilty to second-degree murder, MCL 750.317, and felony-firearm in exchange for a sentence agreement of 13 to 22 years' imprisonment for the murder conviction and two years' imprisonment for the felony-firearm conviction and his agreement to cooperate and testify truthfully against other codefendants. William-Salmon testified at Caddell's first trial in May 2017. The jury was unable to reach a verdict, and the court declared a mistrial. Thereafter, the trial court granted the prosecution's motion to vacate William-Salmon's plea on the ground that he violated his plea agreement to cooperate and provide truthful testimony at Caddell's trial. Defendants were later tried jointly in February 2018 and convicted of the crimes specified above.

*People v. Caddell*, 955 N.W.2d 488, 495 (Mich. Ct. App. 2020), *appeal denied sub nom. People v. William-Salmon*, 951 N.W. 2d 683 (Mich. 2020).

Petitioner makes the following five claims in support of his request for habeas relief: (1) the prosecutor committed "egregious misconduct in closing argument" and improperly attempted to shift the burden of proof to the defense to explain why Petitioner did not testify and why he initially pleaded guilty, violating his due process and equal protection rights; (2) the trial court improperly admitted prejudicial evidence "concerning unrelated murder cases of a co-defendant," violating his right to due process and equal protection; (3) the trial court violated his Fifth, Sixth, and Fourteenth

2

Amendment rights in admitting the testimony of a witness's prior testimony, over his counsel's objection; (4) the trial court's admission of Petitioner's initial guilty plea was prejudicial and violated his right to due process; and (5) the trial court's vacation of a guilty plea for his second-degree murder charge violated Petitioner's right to a fair trial and equal protection. (*See* ECF No. 1, PageID.3.)

## II. STANDARD

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court either (1) "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or (2) decides a case differently than the Supreme Court has on a "set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied

3

clearly established federal law erroneously or incorrectly." *Id.* at 411. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## III. DISCUSSION

### A. Prosecutorial Misconduct (Claim I)

Petitioner first argues that the prosecutor committed misconduct by mentioning during her rebuttal argument that Petitioner had initiated plea negotiations with the prosecutor's office. Petitioner also claims that the prosecutor improperly shifted the burden of proof to Petitioner.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *See Donnelly*, 416 U.S. at 643-45. To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any

4

possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting *Harrington*, 562 U.S. at 103). A habeas petitioner must clear a "high bar" in order to prevail on such claims. *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017).

The Michigan Court of Appeals rejected Petitioner's prosecutorial misconduct claim:

> [E]vidence of William-Salmon's guilty plea was admissible at trial. Thus, the prosecutor was entitled to comment on that evidence during closing argument. Further, the prosecutor's remarks were responsive to defense counsel's arguments regarding the weaknesses of the prosecution's case and that William-Salmon's guilty plea was not truthful (as evidenced by the prosecutor's motion to vacate the plea). It was not improper for the prosecutor to respond by arguing that William-Salmon's decision to initiate plea negotiations refuted the alleged weaknesses identified by the defense. The prosecutor's comments in rebuttal regarding that theory did not shift the burden of proof to William-Salmon. Rather, the prosecutor's argument that William-Salmon initiated the plea only tended to debunk William-Salmon's alternative theory. The remarks did not deny William-Salmon a fair and impartial trial.

*Caddell*, 955 N.W.2d at 515.

The Michigan Court of Appeals concluded that Petitioner's prior plea negotiations with the prosecutor was relevant and admissible under Michigan law. *Caddell*, 955 N.W.2d at 511. A prosecutor does not commit misconduct by introducing evidence that is admissible under state law. *See Dufresne v. Palmer*, 876 F.3d 248, 261 (6th Cir. 2017); *accord Key v. Rapelje,* 634 F. App'x 141, 148 (6th Cir. 2015) ("[T]he prosecutor does not commit misconduct by asking questions that elicit inadmissible evidence.").

In addition, courts recognize that the "prosecution necessarily has 'wide latitude' during closing argument to respond to the defense's strategies, evidence and arguments." *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009) (quoting *United States*

5

*v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008). The prosecutor's remarks about the plea negotiations were proper because they were responsive to defense counsel's closing argument that Petitioner's prior guilty plea was untruthful.

Finally, the trial court instructed the jury that Petitioner was presumed innocent and that the prosecutor had the burden of proving Petitioner's guilt beyond a reasonable doubt. (ECF No. 9-34, PageID.2363-64). Thus, the prosecution's argument did not deprive Petitioner of a fair trial because any possible prejudice which might have resulted from the comment was cured by the trial court's instructions regarding the proper burden of proof. *See Scott v. Elo,* 302 F.3d 598, 603-04 (6th Cir. 2002) ("The trial judge issued proper instructions on the burden of proof and instructed that anything the attorneys had said to the contrary was to be disregarded. Scott's prosecutorial misconduct claim is meritless."). The arguments advanced by Petitioner fail to clear the "high bar" needed to succeed on a prosecutorial misconduct claim, and he is therefore not entitled to relief. *Stewart*, 867 F.3d at 638-39.

### B. Evidentiary Issues (Claims II, III, and IV)

Petitioner, in his second, third, and fourth claims, brings challenges to the admission of various evidence.

It is well settled that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the

6

fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994) (citing *Logan v. Marshall*, 680 F.2d 1121, 1123 (6th Cir. 1982)).

In his second claim, Petitioner argues that the trial court improperly admitted evidence of the Keys and Zechman murders because such evidence was irrelevant and more prejudicial than probative since Petitioner was not actually charged with their murders. The Michigan Court of Appeals rejected the claim, finding the evidence to be relevant:

> The prosecutor's theory of the case was that William-Salmon conspired with Caddell and others to perform hits on behalf of the Richbows (in particular, David Richbow) and the Chapmans. Contrary to William-Salmon's argument on appeal, the charge for conspiracy was not limited to the Reed murder. Rather, as the prosecutor argued at trial, William-Salmon's jail calls also evidenced his participation in the conspiracy to murder Keys and Zechman. The trial court instructed the jury that the agreement that formed the basis for the conspiracy charge "took place or continued during the period from ... November 23rd of 2013 until April 30th of 2014," and thus could encompass an agreement that related to the murders of Keys and Zechman. William-Salmon admitted that he spoke to Caddell on the phone about "people spending money to put hits out on people," and he told Caddell that he would help find one of the victims. William-Salmon also admitted to connecting another person with Caddell to help perform the hits. In addition, the record demonstrated that Caddell's group had failed to murder Keys on several occasions because Zechman had been present. The group did not want to kill her because there were rumors that she was pregnant. William-Salmon's statement to Caddell to "f**k her" established his contribution to the plan to kill both Keys and Zechman, regardless of the potential pregnancy. Therefore, evidence of the Keys and Zechman murders was relevant to the charge of conspiracy in William-Salmon's case.

*Caddell*, 955 N.W.2d at 513-14. The Michigan Court of Appeals further concluded that this evidence was more probative than prejudicial:

> William-Salmon notes that he was not charged with the murders of Keys and Zechman, and he was incarcerated at the time of their murders. But again, he was charged with conspiracy to commit murder, which included a conspiracy related to the murders of Keys and Zechman. And although he was incarcerated at the time of the murders, the jury could still

7

>conclude that William-Salmon conspired and planned the murders from within jail. The trial court did not abuse its discretion by admitting this evidence in William-Salmon's case.

*Id.* at 514.

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and highly prejudicial evidence cannot form the basis for habeas relief because it involves a state law evidentiary issue. *See, e.g.*, *Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008), *rev'd on other grounds*, 563 F.3d 222 (6th Cir. 2009); *see also Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978).

Petitioner's claim that this evidence should have been excluded under Michigan Rule of Evidence 403 for being more prejudicial than probative does not entitle petitioner to habeas relief. The Sixth Circuit observed that "[t]he Supreme Court has never held (except *perhaps* within the capital sentencing context) that a state trial court's admission of *relevant* evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F. 3d 536, 551 (6th Cir. 2012) (emphasis in original). The Michigan Court of Appeals concluded that all of the contested evidence was relevant under Michigan law. The court defers to that determination.

Appraisals of the probative and prejudicial value of evidence are entrusted to the sound discretion of a state trial court judge, and a federal court considering a habeas petition must not disturb that appraisal absent an error of constitutional dimensions. *See Dell v. Straub*, 194 F. Supp. 2d 629, 644-45 (E.D. Mich. 2002). So long as a state court's determination that evidence is more probative than prejudicial is reasonable, a federal court on habeas review will not overturn a state court conviction. *See Clark v.*

8

*O'Dea,* 257 F.3d 498, 503 (6th Cir. 2001). The Michigan Court of Appeals reasonably determined that evidence of the murders of Keys and Zechman was admissible to show Petitioner's participation with co-defendant Caddell in a conspiracy with commit murder. *See Caddell*, 955 N.W.2d at 513-14. Because the state court's determination that this evidence was more probative than prejudicial was reasonable, Petitioner is not entitled to habeas relief on his second claim. *Clark,* 257 F.3d at 503.

In his third claim, Petitioner argues that the trial court abused its discretion by allowing the prosecutor to introduce portions of Mark Slappey's prior statements at trial under the forfeiture-by-wrongdoing rule. Petitioner claims that that the statements were inadmissible hearsay and that their admission also violated his constitutional right of confrontation. The Michigan Court of Appeals rejected Petitioner's claim, finding that Slappey's out-of-court statements were admissible under Michigan Rule of Evidence 804(b)(6) because Petitioner and his co-defendant had made concerted efforts to intimidate Slappey into not testifying:

> Relying on Slappey's statements when refusing to testify, as well as recorded jail calls from Caddell and William-Salmon and other evidence of their threats against Slappey and his family members, the trial court found that defendants made a concerted effort to pressure and intimidate Slappey with the specific intent of precluding his testimony. Accordingly, the court found that defendants engaged in wrongdoing. The trial court noted that Slappey had voluntarily cooperated with the police and prosecutor since 2014, but then, in 2016, despite a no-contact order with defendants, Slappey was transported to court with them and handcuffed to Caddell. Thereafter, Slappey refused to testify at the preliminary examination despite being held in contempt of court. The court also cited evidence of defendants' other attempts to pressure Slappey, including: (1) visits from Caddell's relatives, (2) shooting the windows of Slappey's home, and (3) assaults and intimidation of Slappey in jail at the direction of Caddell and William-Salmon. The trial court found "that both defendants engaged in . . . encouraging wrongdoing to pressure and prevent Mr. Slappey from coming to testify," and that "the wrongdoing that took place, the threats, that the harassment, the shooting out of the windows were

9

> intended for the purpose of procuring Mr. Slappey's unavailability at trial and that this wrongdoing has in fact caused his unavailability."
>
> Unlike the defendant's warnings to the victim in *Burns*, 494 Mich. at 115, 832 N.W.2d 738, which occurred contemporaneously with the offense, Caddell's and William-Salmon's wrongdoing with regard to Slappey occurred during the investigation and prosecution of the case, which allowed a strong inference of intent to cause Slappey's unavailability. *Id.* at 116, 832 N.W.2d 738. Moreover, given Slappey's statement that "I'm not going to end up on a slab" and his refusal to testify because he did not want to be next on the hit list, the trial court did not clearly err by finding that defendants' wrongdoing procured Slappey's unavailability. Therefore, the trial court did not abuse its discretion by admitting Slappey's prior statements under the forfeiture-by-wrongdoing rule in MRE 804(b)(6). Further, given the trial court's express finding that "the wrongdoing that took place . . . [was] intended for the purpose of procuring Mr. Slappey's unavailability at trial," which again is not clearly erroneous, the admission of Slappey's statements did not violate William-Salmon's constitutional right of confrontation.

*Caddell*, 955 N.W.2d at 512-13.

The admissibility of evidence under Michigan's hearsay rules is not cognizable in a habeas corpus proceeding. *See Byrd v. Tessmer*, 82 F. App'x 147, 150 (6th Cir. 2003); *see also Rhea v. Jones*, 622 F. Supp. 2d 562, 589 (W.D. Mich. 2008); *Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002) (finding petitioner's claim that state court erred in admitting hearsay testimony under state evidentiary rule governing declarations against penal interest not cognizable in federal habeas review, where the claim alleged a violation of state law, not a violation of federal constitutional rights). The admission of Slappey's statements in violation of Michigan's rules of evidence would not entitle petitioner to relief.

Petitioner's Confrontation Clause claim is therefore without merit. The forfeiture by wrongdoing rule[4] has a long pedigree in common law and constitutional law. The Supreme Court, in *Crawford v. Washington*, noted that "the rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds; it does not purport to be an alternative means of determining reliability." 541 U.S. 36, 62 (2004) (citing *Reynolds v. United States*, 98 U.S. 145, 158-59 (1879)). Building on that principle, the Supreme Court in *Davis v. Washington* indicated:

> But when defendants seek to undermine the judicial process by procuring or coercing silence from witnesses and victims, the Sixth Amendment does not require courts to acquiesce. While defendants have no duty to assist the State in proving their guilt, they *do* have the duty to refrain from acting in ways that destroy the integrity of the criminal-trial system. We reiterate what we said in *Crawford*: that "the rule of forfeiture by wrongdoing ... extinguishes confrontation claims on essentially equitable grounds." That is, one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation.

547 U.S. 813, 833 (2006) (emphasis in original) (quoting *Crawford*, 541 U.S. at 62). The Court has made clear that the forfeiture-by-wrongdoing rule applies "only when the defendant engaged in conduct designed to prevent the witness from testifying." *Giles v. California*, 554 U.S. 353, 359 (2008).

In the present case, the evidence clearly shows that petitioner and his co-defendant made numerous threats to Mr. Slappey to prevent him from testifying in court against them. The trial judge did not err in admitting Mr. Slappey's hearsay statements pursuant to Michigan Rule of Evidence 804(b)(6). The Michigan Court of Appeals'

---

[4] The rule is codified in Michigan Rule of Evidence 804(b)(6); its federal counterpart is Federal Rule of Evidence 804(b)(6).

rejection of Petitioner's Confrontation Clause claim was not an unreasonable application of clearly established law. *See Ware v. Harry*, 636 F. Supp. 2d 574, 586-87 (E.D. Mich. 2008). Petitioner is not entitled to relief on his third claim.

Petitioner's fourth claim alleges that the state trial court violated Michigan Rule of Evidence 410 by admitting into evidence Petitioner's prior guilty plea. However, similar to Claims II and III, a state court's ruling on the admissibility of evidence pursuant to Rule 410 is non-cognizable on federal habeas review. *See Frazier v. Mitchell*, 188 F. Supp. 2d 798, 831 (N.D. Ohio 2001), *aff'd in part and rev'd in part on other grounds*, 343 F.3d 780 (6th Cir. 2003); *Windom v. Skipper*, No. 2:16-10276, 2018 WL 1898470, at *5 (E.D. Mich. Apr. 20, 2018). Indeed, nothing in the text of Federal Rule of Evidence 410 or its Michigan counterpart refer to any federal constitutional right. *See Beach v. Moore,* 343 F. App'x 7, 11 (6th Cir. 2009). Petitioner would not be entitled to habeas relief merely because the admission of evidence of his vacated guilty plea violated Rule 410.

## C. Plea Withdrawal (Claim V)

Finally, Petitioner claims that the trial judge erroneously concluded that Petitioner had failed to comply with the terms of the plea agreement and thus violated his constitutional rights by vacating Petitioner's guilty plea after co-defendant Caddell's first trial ended in a hung jury. He requests specific performance of the initial plea deal. (ECF No. 1, PageID.38.)

As an initial matter, there is no constitutional right to plea bargain. *See Weatherford v. Bursey,* 429 U.S. 545, 561 (1977). "It is a novel argument that constitutional rights are infringed by trying the defendant rather than accepting his plea

12

of guilty." *Id.* In the present case, the trial court's decision to vacate Petitioner's guilty plea, after finding he did not comply with the terms of his plea agreement, cannot serve as the basis for federal habeas relief. *Cf. Ringstaff v. Mintzes,* 539 F. Supp. 1124, 1127-28 (E.D. Mich. 1982) (holding that state trial court's alleged error in refusing to accept habeas petitioner's voluntary offer to plead guilty to second-degree murder was no basis for writ of habeas corpus because there is no constitutional right to a plea bargain). Petitioner is not entitled to habeas relief because he has not cited any Supreme Court decision which holds that a state court violates the Constitution when it vacates a defendant's plea and sentencing agreement after the defendant fails to testify truthfully or otherwise cooperate for the prosecution under the terms of the plea agreement. *See Furman v. Haas*, No. 13-11493, 2015 WL 5460641, at *5-6 (E.D. Mich. Sept. 16, 2015); *Reyes v. Phillips*, No. 02 Civ. 7319, 2005 WL 275741, at *7-8 (S.D.N.Y. Oct. 24, 2005).

In any event, even if Petitioner had complied with the terms of the agreement, the court lacks the power to compel the state trial judge to order specific performance of the original plea agreement as Petitioner requests. Although a state prosecutor's breach of a plea bargain is a claim cognizable in a habeas proceeding, a federal court lacks the supervising authority over the state courts to specify the remedy for such violation. *See McPherson v. Barksdale*, 640 F.2d 780, 781 (6th Cir. 1981). The appropriate remedy for the government's breach of a plea agreement is either specific performance of the agreement or an opportunity to withdraw the plea. *See Santobello v. New York*, 404 U.S. 257, 263 (1971). However, the appropriate remedy for the breach of a plea agreement lies within the trial court's discretion. *See id.* at 263. *See also Peavy v.*

*United States*, 31 F.3d 1341, 1346 (6th Cir. 1994) (explaining that the choice between the two remedies of specific performance or plea withdrawal is not up to the defendant but rests instead with "the sound discretion" of the trial court.). Finally, the federal constitution does not require specific performance of a plea agreement. *See Mabry v. Johnson*, 467 U.S. 504, 510, n. 11 (1984) (citing *Santobello*, 404 U.S. at 262-63). *See also Kernan v. Cuero*, 138 S. Ct. 4, 8-9 (2017) (finding no clearly established Supreme Court law requires specific performance as a remedy for the breach of a plea agreement, explaining that prior Supreme Court opinions determined that the ultimate relief to which petitioner was entitled for breach of plea agreement was left to the discretion of the state court, and expressly declining to hold that the constitution compelled specific performance of a broken prosecutorial promise as the sole remedy).

Petitioner seeks specific performance of the original plea agreement. (ECF No. 1, PageID.38.) Because "*Santobello* provides no basis for granting specific performance of such an alleged plea bargain in a federal forum," *McPherson,* 640 F.2d at 782, Petitioner is not entitled to habeas relief on his fifth claim. *See Kernan*, 138 S. Ct. at 8-9.

### D. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this

standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to only a "threshold inquiry" into the underlying merits of the claim. *Id.* at 336-37.

Having considered the matter, the court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims. Reasonable jurists would not debate the resolution of any of his claims. Accordingly, the court will deny Petitioner a certificate of appealability.

## IV. CONCLUSION

IT IS ORDERED that Petitioner Ricco Rafeal William-Salmon's "Petition for Writ of Habeas Corpus" (ECF No. 1) is DENIED.

IT IS FURTHER ORDERED that a Certificate of Appealability is DENIED.

s/Robert H. Cleland               /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  November 8, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 8, 2021, by electronic and/or ordinary mail.

s/Lisa Wagner                     /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\21-10188.WILLIAM-SALMON.DenyingHabeasAndCOA.DHB.MAZ.docx